**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

KINH VI LY,

                          Petitioner,

      v.

JESSICA SAGE, et al.,

                          Respondents.

CIVIL ACTION NO. 3:26-CV-00973

(MEHALCHICK, J.)

**MEMORANDUM**

Petitioner, Kinh Vi Ly ("Ly") brings this petition for writ of habeas corpus. (Doc. 1). On April 16, 2026, Ly filed the instant petition, requesting that Respondents Jessica Sage and Michael Rose[1] release him from custody at the Lewisburg Federal Correction Institution ("FCI Lewisburg"). (Doc. 1, at 22). On April 23, 2026, Sage filed a response to Ly's petition, and on April 28, 2026, Ly filed a traverse. (Doc. 3; Doc. 4). For the following reasons, Ly's petition (Doc. 1) is **GRANTED**.

---

[1] Pursuant to the "immediate custodian rule," the only proper respondent in this case is Jessica Sage ("Sage"), Warden of FCI Lewisburg. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Ly is detained at FCI Lewisburg, Sage is the proper respondent. (Doc. 1, at 2); *see Rumsfeld*, 542 U.S. at 434. As such, Respondent Michael Rose is **DISMISSED**. However, the government will be bound by the Court's judgment because Sage is acting as an agent of the federal government by detaining Ly on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

I.      FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Ly's petition, Sage's response, and the exhibits thereto. (Doc. 1; Doc. 3). Ly was born in Vietnam and entered the United States as a refugee. (Doc. 1, at 8). In 1989, the Dauphin County Court of Common Pleas convicted Ly of criminal solicitation and criminal attempt, specifically Ly attempted to sell 3.5 ounces of cocaine to an undercover United States agent. (Doc. 1, at 8; Doc. 1-5; Doc. 1-6). The government submits that Department of Homeland Security ("DHS") records indicate that Ly also plead guilty to murder, corrupt organizations, robbery, receiving stolen property, theft by unlawful taking, burglary, and possession of drugs; however, the Dauphin County records show that Ly was only charged with and convicted of criminal solicitation and criminal attempt. (Doc. 3, at 2; Doc. 1-5; Doc. 1-6).

When Ly was released from prison in January 1994, the Immigration and Naturalization Service took Ly into custody and placed Ly in removal proceedings. (Doc. 1, at 8). An immigration judge ordered Ly removed to Vietnam on January 12, 1994. (Doc. 1, at 8; Doc. 3, at 2). Ly remained in immigration detention from January 1994 until July 1998. (Doc. 1, at 8). Ly submits that around 1996, he applied for travel documents, and the Vietnam Consulate denied his request. (Doc. 1, at 8). On or about July 22, 1998, immigration authorities released Ly from immigration detention under an order of supervision. (Doc. 1, at 8-9; Doc. 3, at 2). Ly remained under the order of supervision for about 27 years without incident. (Doc. 1, at 9).

Ly submits that since his criminal conviction, he has married and welcomed a United States citizen daughter, owned successful restaurants, paid taxes, and purchased two properties in Pennsylvania. (Doc. 1, at 9). According to Ly, he is a dedicated husband, father,

friend, and member of his community. (Doc. 1, at 9). Ly has participated in community efforts, such as the Race Against Racism, and Ly has regularly donated to St. Jude Children's Research Hospital. (Doc. 1, at 9).

On October 15, 2025, Ly reported for his annual ICE check-in appointment, where ICE officers revoked Ly's order of supervision and re-detained him. (Doc. 1, at 9; Doc. 3-4). Three months later, on January 13, 2026, ICE instructed Ly to complete a travel document application to facilitate his removal to Vietnam. (Doc. 3, at 3). The government submits that the travel document request is pending with the Vietnam Embassy, and that Ly's removal is significantly likely in the reasonably foreseeable future. (Doc. 3, at 3). Ly has been in immigration detention for seven months, and he is currently detained at FCI Lewisburg. (Doc. 1, at 3, 9).

## II.   LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and

constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 400 (D.N.J. 2025) (finding petitioner's continued detention without reasonably imminent removal is unreasonable and ordering release).

III.   **JURISDICTION**

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

4

Habeas actions based on whether a petitioner is subject to unconstitutionally lengthy detention remain in the jurisdiction of district courts. *Kahlil, 164 F.4th at 277-79* (holding detention-specific claims, like length and conditions-of-confinement claims, do not arise from removal proceedings and can be addressed by district courts); *see Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). The question of whether a petitioner's detention has been unconstitutionally long is wholly collateral to removal proceedings and cannot be meaningfully reviewed on a PFR. *Kahlil, 164 F.4th at 278-79* (finding that length of confinement claim "does not get channeled into the PFR review process"). Thus, the Court retains jurisdiction over the legal question of whether Ly's detention after his order of removal became final has become unconstitutionally prolonged and unrelated to the purpose of removal. *Jennings*, 583 U.S. at 294; *Kahlil, 164 F.4th at 274-79*; *Zadvydas*, 533 U.S. at 688.

## IV.    DISCUSSION

Ly contends that his re-detention violates the Due Process Clause of the Fifth Amendment, section 1231 of the INA, 8 C.F.R. § 241.13, and the Administrative Procedure Act because his re-detention has exceeded six months and removal is not reasonably foreseeable. (Doc. 1, at 17-18). To support his contention that removal is not reasonably foreseeable Ly provides that he previously spent significant time in immigration detention during which the government was unable to remove him to Vietnam, he has been re-detained

for approximately seven months and the government has not been able to remove him to Vietnam, and pursuant to the repatriation process for Vietnamese refugees who immigrated to the United States before 1995, there is no evidence that Ly is eligible to be removed to Vietnam. (Doc. 1, at 10-13). Ly also provides evidence that historically low numbers of removals occur to Vietnam for immigrants who arrived in the United States before 1995. (Doc. 1, at 10-13, 18; Doc. 1-21; Doc. 1-22; Doc. 1-23).

The government counters that Ly has failed to make a good showing that there is no significant likelihood of his removal in the reasonably foreseeable future because his claims are speculative. (Doc. 3, at 5). Nevertheless, to rebut Ly's showing, the government provides that that it sent Ly's travel document application to the Vietnam Embassy on January 13, 2025. (Doc. 3, at 5). The government also provides that in fiscal year 2025, 699 noncitizens were removed to Vietnam, including 327 Vietnamese refugees who entered the United States before 1995. (Doc. 3, at 6). The government also provides that Ly's due process rights have been protected while in custody by ICE's post-order custody review process. (Doc. 3, at 8). In his traverse, Ly counters that "anticipation is not evidence," and the government's conclusory assertions that there is a remote possibility of removal is not enough to rebut his showing that there is not a significant likelihood of removal in the reasonably foreseeable future. (Doc. 4, at 5).

Section 1231 of the INA provides for the detention of noncitizens with final orders of removal. 8 U.S.C. § 1231. Pursuant to 8 U.S.C. § 1231, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Noncitizens convicted of certain criminal offenses and noncitizens whom the Attorney

General finds to be a risk to the community or unlikely to comply with an order of removal may be detained beyond the 90-day removal period. 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001), the Supreme Court found that indefinite detention of a noncitizen with a final order of removal violates the Due Process Clause of the Fifth Amendment, and that detention of a noncitizen with a final order of removal must be limited with a definite endpoint. The Supreme Court determined that to discern whether such post-order of removal detention comports with the Due Process Clause of the Fifth Amendment, habeas courts must ask whether the detention "exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. The Supreme Court found that detention post-order of removal is presumed reasonable for a period under six months. *Zadvydas*, 533 U.S. at 701. After the presumptively reasonable six-month period runs and the detained noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. As the period of confinement grows, what counts as reasonably foreseeable future conversely shrinks. *Zadvydas*, 533 U.S. at 701. If removal is ultimately not reasonably foreseeable, habeas courts should hold continued detention unreasonable and order release. *Zadvydas*, 533 U.S. at 699-700.

Vietnam has long refused to accept Vietnamese nationals who came to the United States as refugees before 1995. *Nguyen v. Scott*, 796 F. Supp. 3d 703, 714 (W.D. Wash. 2025); *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083-84 (C.D. Ca. 2020). After the Vietnam War, the North Vietnamese government established the current Socialist Republic of Vietnam, and hundreds of thousands of people from the former Republic of Vietnam (South Vietnam)

immigrated to the United States as refugees under various humanitarian programs. *See Trinh, 466 F. Supp. at 1083-84*. Between the end of the Vietnam War and 2008, Vietnam refused to repatriate any Vietnamese immigrants who had been ordered removed from the United States. *Trinh, 466 F. Supp. 3d at 1083-84*.

In 2008, the United States and Vietnam reached a diplomatic agreement, and Vietnam agreed to consider repatriation requests for certain Vietnamese immigrants, who had arrived in the United States after July 12, 1995.[2] *Trinh, 466 F. Supp. 3d at 1083-84*. In 2017 and 2018, ICE met with Vietnamese officials to negotiate the repatriation of pre-1995 Vietnamese immigrants; however, these efforts proved unsuccessful, and ICE instructed field offices to release pre-1995 Vietnamese immigrants on orders of supervision within 90 days of their final orders of removal. *Trinh, 466 F. Supp. 3d at 1083-84*. In November 2020, the United States and Vietnam entered into a memorandum of understanding ("MOU"), which created a process for removing pre-1995 Vietnamese refugees. *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026); *Nguyen v. Hude, 788 F. Supp. 3d 144, 148 (D. Mass. 2025)*. Under the 2020 MOU, for a Vietnamese immigrant with an order of removal to be eligible for acceptance of return to Vietnam, they must meet four conditions:

1. Has Vietnamese citizenship and does not have citizenship of any other country at the same time;
2. Has violated U.S. law and has been ordered removed by a U.S. competent authority (and, if sentenced to a prison term, the individual must have completed any term of imprisonment before removal or a U.S. competent authority must have ordered a reduction in the sentence or the individual's release from prison);

---

[2] After the Vietnam war, on July 11, 1995, the United States and Vietnam established normal diplomatic relations. U.S.—Vietnam Relations, U.S. Embassy & Consulate in Vietnam, https://vn.usembassy.gov/u-s-vietnam-relations/ (last visited May 14, 2026).

3. Resided in Vietnam prior to arriving to the United States and currently has no right to reside in any other country or territory;

4. [Redacted][3]

*Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026); *Nguyen*, 788 F. Supp. 3d at 148.

Before a Vietnamese immigrant without a passport or other travel document can be repatriated, Vietnam must issue a passport or other travel document in response to a request from ICE. *Trinh*, 466 F. Supp. 3d at 1083-84. Vietnam requires proof of citizenship, so travel documents can be difficult to obtain as most refugees lack proof of citizenship because of war, displacement, rural births, or destruction of records. *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026). Additionally, the process for repatriating pre-1995 Vietnamese refugees is highly individualized, so responses can take months and the Vietnamese government may take no action rather than issuing a formal denial of an application for travel documents. *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026).

Courts in the Third Circuit have found that evidence of the process for procuring travel documents from Vietnam for pre-1995 immigrants establishes good reason to believe that removal of a pre-1995 Vietnamese immigrant detained under 8 U.S.C § 1231 is not reasonably foreseeable.[4] *Lam v. Noem*, No 3:25-cv-00397, 2026 WL 492383, at *6-*7 (W.D. Pa. Feb. 23,

---

[3] The fourth mandatory condition is redacted and the government has not disclosed any information about what that condition requires. *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026); *Nguyen*, 788 F. Supp. 3d at 148. Therefore, the undersigned cannot determine with certainty whether Ly meets the requirements for removal to Vietnam under the 2020 MOU.

[4] In *Joseph v. United States*, 127 F. App'x 79, 81 (3d Cir. 2005), the Third Circuit found that Joseph, a noncitizen from Antigua-Barbuda with a final order of removal, failed to show that his removal was unlikely in the reasonably foreseeable future because DHS had requested travel documents and the issuing country expressed a willingness to issue the travel documents and had advised that travel documents would be forthcoming. *Joseph*, 127 F. App'x at 81. While the Court acknowledges the holding in *Joseph*, the case is distinguishable

2026) (finding removal not reasonably foreseeable for pre-1995 Vietnamese refugee with stateless status and a travel document application pending for five months); *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026) (finding removal not reasonably foreseeable for pre-1995 Vietnamese refugee with a travel document application pending for four months); *Bo v. Bondi*, 3:26-cv-28, Dkt. No. 18 (W.D. Pa. Feb. 1, 2026) (finding same). Courts in the Third Circuit have also found that assertions from the government of a remote possibility of eventual removal is not sufficient evidence to rebut that showing. *Lam*, 2026 WL 492383, at *7; *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026); *Bo v. Bondi*, 3:26-cv-28, Dkt. No. 18 (W.D. Pa. Feb. 1, 2026).

Ly has been re-detained under 8 U.S.C. § 1231 for seven months, while the government has attempted to obtain travel documents for his removal. (Doc. 1, at 1-2; Doc. 3, at 3). Ly's presumptively reasonable six-month period of § 1231 detention has run. *Zadvydas* 533 U.S. at 701. By providing evidence of the highly individualized and unpredictable repatriation process for pre-1995 Vietnamese refugees, Ly has established good reason to believe that there is not a significant likelihood of his removal in the reasonably foreseeable future. (Doc. 1, at 10-13, 18-20; Doc. 1-21; Doc. 1-22; Doc. 1-23); *Lam*, 2026 WL 492383, at *7; *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026); *Bo v. Bondi*, 3:26-cv-28, Dkt. No. 18 (W.D. Pa. Feb. 1, 2026). Ly's travel document application has been with the

---

from Ly's because of the highly individualized process for and history of repatriation of Vietnamese refugees who immigrated to the United States before July 12, 1995. *See Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026); *see also Nguyen*, 788 F. Supp. 3d at 148. Further, the Vietnamese government has not expressed a willingness to issue travel documents to Ly outside of the 2020 MOU, to which the undersigned does not have access to the fourth eligibility factor, and which does not mandate that Vietnam will accept the Ly. *See Lam*, 2026 WL 492383, at *7. While the government anticipates Ly's travel documents, Vietnam has not advised that Ly's travel documents will be forthcoming. (*See* Doc. 3, at 3).

Vietnam embassy for four months, with no indication if or when the application will be approved or travel documents will be issued. (Doc. 3, at 3).

The government's argument focuses on its contention that Ly failed to provide evidence to show good reason why removal was not reasonably foreseeable and only rebuts Ly's showing *in arguendo*. (Doc. 3, at 5-6). Nevertheless, to rebut Ly's showing, the government provides that it is in the process of obtaining travel documents for Ly and repatriating him to Vietnam. (Doc. 3, at 5-6). The government also provides that in fiscal year 2025, 699 people were removed to Vietnam, including 327 who entered the United States prior to 1995, and that since 2025, no travel document requests to Vietnam have been denied. (Doc. 3, at 6). While the government avers that requesting travel documents is sufficient to rebut Ly's showing, the caselaw the government relies on for this assertion does not concern the issuance of travel documents from Vietnam for pre-1995 Vietnamese refugees. (Doc. 3, at 6-7); *Appiah v. Lowe*, No. 3:24-cv-2222, 2025 WL 510974, at *6 (M.D. Pa. Feb. 14, 2025) (finding the government rebutted the showing that removal was not reasonably foreseeable with evidence that the Ghanan petitioner underwent a repatriation interview with Ghanan officials, the government had been regularly communicating with the Ghanan Embassy, and the petitioner's Ghanan citizenship had been established); *Grant v. Warden of Cliton Cnty. Corr. Facility*, No. 1:22-cv-0331, 2022 WL 3045842, at *4 (M.D. Pa. Aug. 2, 2022) (finding petitioner failed to provide good reason that removal was not reasonably foreseeable by asserting that the government cannot establish he is a noncitizen from Jamaica); *Boyce v. Holder*, No. 4:09-cv-02254, 2010 WL 817482, at *7-*8 (M.D. Pa. 2010) (finding petitioner failed to show removal was not reasonably foreseeable because he failed to provide evidence that Panama had denied his citizenship or that Panama will refuse to issue travel

11

documentation for him); *Robinson v. District Director of ICE*, No. 1:09-cv-0637, 2009 WL 3366439, at *4 (M.D. Pa. Oct. 19, 2009) (finding petitioner failed to meet his burden to show removal is not reasonably foreseeable by offering no evidence that the Liberian government will not issue a travel document); *Xiangxing v. Sage*, No. 4:26-cv-00546, 2026 WL 1046765, at *2 (M.D. Pa. April 17, 2026) (finding petitioner failed to show removal was not reasonably foreseeable because China already verified the petitioner's nationality, a key requirement of the Chinese repatriation process); *Qusemi v. Kurzdorfoer*, No. 25-cv-668, 2025 WL 2938607, at *4 (W.D.N.Y. Oct. 16, 2025) (finding deference was owed to immigration authorities as they navigated diplomatic barriers imposed by Afghanistan). Then with regard to the data on removals to Vietnam in 2025 and 2026, the government fails to provide how long it took to effectuate those removals and whether the removed noncitizens met the criteria of the 2020 MOU. (*See* Doc. 3, at 6). While Ly has completed a travel document application, which ICE has submitted to the Vietnam Embassy, the government's assertion that Vietnam will issue a travel document for Ly in the reasonably foreseeable future is speculative and fails rebut Ly's showing. (Doc. 3, at 4-8). *Lam*, No 2026 WL 492383, at *7; *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026); *Bo v. Bondi*, 3:26-cv-28, Dkt. No. 18 (W.D. Pa. Feb. 1, 2026). Accordingly, Ly's petition for writ of habeas corpus is **GRANTED**.[5] (Doc. 1).

---

[5] As the Court grants relief under the INA and Due Process Clause of the Fifth Amendment, the Court declines to address Ly's administrative procedure act claims at this time. (Doc. 1, at 16). The Court also notes that Ly seeks relief in the form of attorney's fees and costs. (Doc. 1, at 23). The Court cannot award attorney's fees without first assessing affidavits and other evidence regarding the reasonableness of the fees sought. *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 133 (3d Cir. 2016). (nonprecedential) (noting that the party seeking attorney's fees bears "the burden of producing evidence as to the reasonableness of the fees" and reversing a district court's grant of a request for fees based "solely [on] a declaration stating the amount claimed"); *see also Ohm Sys., Inc. v. Senergene Sols., LLC*, No. CV 23-1340, 2025 WL 2772612, at *2 (D.N.J. Sept. 29, 2025). (noting that a court cannot assess a request for attorney's fees without sufficient evidence

V.    CONCLUSION

For the foregoing reasons, Ly's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Sage is **ORDERED** to release Ly from custody and restore the conditions of his prior supervisory release. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

                                        BY THE COURT:


Dated: May 14, 2026                     /s/ Karoline Mehalchick
                                        **KAROLINE MEHALCHICK**
                                        **United States District Judge**

---

regarding the reasonableness of the fees sought). Accordingly, Ly must request attorney's fees in a separate motion with accompanying exhibits.